**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **PATRICIA WHITE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:24-cv-00054-TFM-B** |
| | ) | |
| **DONALD TAYLOR and** | ) | |
| **JUSTIN WELLS; et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION TO EXCLUDE OPINION TESTIMONY OF CHARLES COURREGE**

Comes now Plaintiff, by and through undersigned counsel, and responds and objects to Defendants' Motion to Exclude Opinion Testimony of Charles Courrege. [Doc. 67]. Plaintiff respectfully requests the Court deny Defendants' motion. Defendants attached Mr. Courrege's expert report to their motion as Exhibit A, and Plaintiff attaches it to this response as Exhibit A. Plaintiff also attaches portions of Mr. Courrege's deposition that are referenced in this response. Plaintiff also incorporates herein her response to Defendants' Motion for Summary Judgment and evidence submitted in support of that response. [Doc. 76]. Defendants have challenged Plaintiff's police practices expert, Charles "Scott" Courrege, under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Fed. R. Evid. 403 and 702.

## I. STANDARD FOR THE ADMISSIBILITY OF EXPERT TESTIMONY

When a party challenges an expert, trial courts should engage in a three-part inquiry to assess "whether[] (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier

of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010) (citing *United States v. Frazier*, 387 F.3d 1244, 1260 (2004).

## II. ARGUMENT

**Excessive Force**

**(1) Qualifications of Expert Charles "Scott" Courrege**

Defendants do not appear to challenge Courrege's qualifications.

**(2) Methodology and Reliability**

"While the scientific criteria ["of assess[ing] the reliability of a scientific opinion"] may be used in a non-scientific, experience-based testimony, these criteria have little applicability to an expert discussing police practices, policies, and use-of-force techniques. Further, the Supreme Court emphasized the Daubert analysis is a flexible one." *Daugherty v. Hurst*, 1:17-cv-72-TFM-C (S.D. Ala., Sept. 15, 2020) (citing *Kumho Tire v. Carmichael*, 526 U.S 137, 150 (1999); see also *Frazier* at 1262. When assessing reliability, courts should be conscious of the "difference between a district court's evaluation of an expert's reliability, which is required by *Daubert,* and an expert's believability or persuasiveness, which is reserved for the trier of fact." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1293 n.7 (11th Cir. 2005).

Defendants challenge Courrege's methodology and reliability primarily for two reasons: he did not review the parties' depositions before compiling his report and testifying; and he omitted Plaintiff White's slight movement back into the vehicle from his report. Notably, Courrege had no opportunity to review any of the parties' depositions before his report or his deposition testimony.[1]

[1] Courrege's report was due August 16, 2024, under the Rule 16 Scheduling Order. [Doc. 14]. Both parties' counsel received the transcript for White's deposition on Oct. 11, a Friday, four days before Courrege's deposition. Counsel did not send a copy of White's transcript to Courrege before his deposition. Parties' counsel did not receive the

Courrege reviewed an extensive collection of case materials in forming his opinions, including but not limited to incident and arrest reports, Saraland policies and procedures, photographs and videos from the pursuit and extraction, Defendants' responses to Requests for Admissions and Interrogatories, and Alabama Department of Forensic Sciences reports.[2] (Ex. A – Charles "Scott" Courrege's Report at 4-5). Given the objective nature of any excessive force analysis under the federal law claims, his inability to have reviewed the parties' depositions has no bearing on the reliability of that part of his testimony that is relevant. Given the subjective nature of the state law claim analysis, his non-dependence on the parties' testimony is a question of believability or persuasiveness for the jury.

As for the claim that Courrege omits White's minor movement back into the vehicle, Defendants state in their Motion to Exclude Opinion Testimony of Charles Courrege (Doc. 67), "[Courrege's] narrative report never considers the undisputed movement of Ms. White's body back towards the vehicle, as shown on Cpl. Wells[‘s] body cam, as Cpl. Taylor attempted to escort her out of the vehicle, before resorting to pulling her out." (Defendant's Motion to Exclude Opinion Testimony of Charles Courrege, Doc. 67 at 12, PageID.335). They further state, "His narrative report is completely silent about the undisputed movement of Ms. White's body back towards the vehicle, as shown on Cpl. Wells[‘s] body cam, as Cpl. Taylor attempted to escort her out of the vehicle, before resorting to pulling her out." (Id. at 13). This is simply not the case. In the "Summary of Events" in his report, Courrege includes the movement ("As Mrs. White's body moved back slightly back into the vehicle... "). (Courrege Report at 6). In the "Opinions and

transcript for Wells's and Taylor's depositions until Oct. 16, the day after Courrege's deposition. (Plaintiff Patricia White was deposed October 1, 2024; Defendant Justin Wells was deposed Oct. 2; Defendant Donald Taylor was deposed Oct. 2-3. Courrege was deposed Oct. 15.).

[2] Courrege lists in his report twenty-five (25) items he reviewed to form his opinions, twenty-four (24) of which were, with varying degrees, relevant to his opinion. Most of these items were produced by Defendants in discovery.

Analysis" section, he discusses it: "Cpl. Taylor gave no independent directions for Mrs. White to exit the vehicle before pulling her toward the precarious position of uncontrollably falling out of the open driver's door. Further, there was no attempt to stabilize the situation and allow for Mrs. White to comply – as would be expected with a 'suspect' in this physical condition." (Id. at 11). He further discusses it in the "Opinions and Analysis" section: "However, based on the totality of the circumstances, it is more reasonable to perceive Mrs. White's actions as a reaction to being pulled without warning and without having time to steady and balance herself for the exit. Subjects very often have some reaction to the application of force and such a response should be expected. Or perhaps, she was attempting to place her vehicle in 'PARK' so that she could safely exit and not injure herself or the officers. This is why it is critical for an officer to give clear and concise commands and allow the subject time to comply in situations where there is minimal threat to the officer."[3] (Id. at 12). Courrege also testified regarding this minor movement. (e.g., Ex. B – Charles Courrege Deposition at 173:3-177:21).

A jury should be allowed to decide whether Courrege is believable or persuasive and whether his interpretation of White's minor movement is credible. Furthermore, a jury should be allowed to decide whether his non-dependence on biased parties' deposition testimony affects his credibility. However, the methods upon which he based his opinions are reliable.

**(3) Assistance to the Trier of Fact**

Defendants argue that portions of Courrege's opinions are inadmissible legal conclusions and/or would not assist the trier of fact. Plaintiff agrees an expert's legal conclusions and matters

[3] Whether Courrege's opinions in this area are admissible or whether they would assist a jury in understanding issues are separate matters. Plaintiff's position is that any opinion in this area that does not reach a legal conclusion would assist a jury in understanding issues beyond common sense based on Courrege's (and other purportedly trained officers') training and experience in extracting arrestees from elevated vehicle in various scenarios – the type of training and experience a non-officer, layperson lacks.

that wouldn't assist the jury are generally due to be excluded. "[A]llowing an expert witness to tell the jury whether the [d]efendants used excessive force would essentially remove from the jury the task of applying standards of reasonableness and replace it with the task of evaluating the testimony of the parties' experts." *Lizarazo v. Greaves*, 2018 WL 78224943 at 2 (S.D. Fla., June 21, 2018). Expert opinions "that [an officer] used excessive force in effectuating [an] arrest, as such testimony 'offers nothing more than what lawyers for the parties can argue in closing arguments.'" *Washington v. City of Waldo, Fla.*, 2016 WL 3545909 at 4 (N.D. Fla. March 1, 2016) (quoting *Frazier* at 1262-63). Plaintiff respectfully asks the Court allow Courrege to testify to generally accepted standards for police practice, procedure, training, and use-of-force techniques and also respectfully requests the Court allow Courrege to testify whether Cpl. Taylor's conduct violated those standards in this case. However, due to the incorporation of *Graham* factors into police training and practice, the distinction between permissible topics can be shaky.[4] Courrege's testimony about the way officers are trained and any deviations from this training are not legal conclusions. See *Estate of Baker v. Castro*, 2018 WL 11355141 at 4 (S.D. Texas Sept. 7, 2018).[5]

Defendants attack Courrege's report with various excerpts. For example, from a section under "Opinions and Analysis" that is titled in a complete sentence ("The force used by Cpl. Taylor to remove Mrs. White from the vehicle was not consistent with generally accepted police practices and use of force principles[]" (Courrege Report at 7) (all-caps adjusted)):

---

[4] *Graham* and its factors have been adopted into police training and policy. Defendant's expert, John "Jack" Ryan testified that *Graham* has "been adopted in the training and policy." (Ex. C - John Ryan Deposition at 66:16-21) ("So *Graham* in some sense or the three-part test that's been adopted in training and policy recognizes [the range of force and range of officers], because they recognize it as a range of threat, depending on what the particular totality of circumstances is.") (discussing the obsoletion of the use of force continuum vs. more applicable range of threat).

[5] "The objective reasonableness standards are important, given the fact that *Graham* is a part of police standards contained in officer trainings. [The expert] is offering *Graham* as a reference point for the jury to understand the way that officers are trained and how incidents are investigated. His comments on how [the police department] teaches the standards laid out in *Graham*, how [the police department] applies the factors during investigations, and any deviations from the standard are not legal conclusions. These topics are within his area of expertise." *Estate of Baker* at 4.

> "Accordingly, it is my opinion that Mrs. White posed no immediate threat of harm to the officers and she was not resisting arrest at the time of her apprehension. Although there was a government interest in effecting her detention, taken together, the *Graham* factors do not support the technique or level of force used by Cpl. Taylor."

(Id. at 8).

The excerpt from Defendants' motion above omits the final line of that paragraph:

> "Cpl. Taylor's actions were not consistent with generally accepted police practices and use of force principles[ ]. "

(Id.).

The entire next section of the report (about 4 and ½ pages) discusses the "relevant training, policy/procedure, and generally accepted police practices." (Courrege Report quoted at 9 and referenced at 8-12). For example:

> "… Two of the commonly utilized use of force and defensive tactics training programs are know as Human Factor Research Group [(HFRG)] – Threat Pattern Recognition (formerly PPCT Defensive Tactics) and Strategic Self-Defense and Gunfighting Tactics (SSGT). HFRG and SSGT generally identify levels or types of subject resistance and the corresponding levels of officer response or control. These categories serve to illustrate how certain use of force and defensive tactics are reasonably applied to a subject's resistance, and do not act as a set rule or predetermined response to every situation."

(Id. at 9).

As Courrege explains in his report, "[n]ational training protocols and the National Consensus Policy on Use of Force have recognized that a formal 'force continuum' is becoming a less accepted practice in favor of the 'integrated' or constitutional-based[6] use of force approach that is described above." Courrege continues his description of the policy, procedure, and training

---

[6] Defendants argue, "Highlighting the fact that Plaintiff's expert is improperly attempting to assert legal conclusions as opinion testimony in this case is Mr. Courrege's own statement describing his opinions as 'the aforementioned constitutional-based analysis… ' It is not the province of this 'police practice' expert to provide legal opinions about the constitutionality of the force employed by Cpl. Taylor." (Def. Motion at 9-10, PageID.332-33). The adjective "constitutional-based" is based on fact. As shown previously, the police policies, procedures, and training are heavily based on *Graham*, which has been integrated into police policies, procedures, and training across the country since the opinion was rendered over thirty-five years ago, and *Graham* is based on the constitution and the rights granted by it.

regarding use of force. (Id. at 8-12).

Courrege discusses police training regarding "passive or verbal non-compliance," "active or defensive resistance," and "aggressive resistance" and the applicable police responses. (Id. at 9). He discusses the concept of de-escalation in the context of police practices and procedure. (Id. at 10). One portion of the de-escalation principle that Courrege cites in his report comes from the National Consensus Policy and states:

> "1. An officer shall use de-escalation techniques and other alternatives to higher levels of force consistent with his or her training whenever possible and appropriate before resorting to force and to reduce the need for force.
>
> 2. Whenever possible and when such delay will not compromise the safety of the officer or another and will not result in the destruction of evidence, escape of a suspect, or commission of a crime, an officer shall allow an individual time and opportunity to submit to verbal commands before force is used."

(Id. at 10-11).

Courrege continues, "Cpl. Taylor's actions and the time before he resorted to physical force completely disregarded generally accepted de-escalation practices and Saraland Police Department's verbal direction policy/procedure." (Id. at 11). He testified to this generally accepted policy and procedure of de-escalation in his deposition and how Cpl. Taylor did not follow it. (e.g., Courrege Depo at 150:2-13; 155:14-19; 159: 7-14; 164:3-12; 172:4-11; 179:2-9). Clearly, a dispute about the applications of de-escalation exists in this case. (Id. 180:2-187:16).

Defendants argue the topic of de-escalation within Courrege's opinions is "inadmissible because 'the Fourth Amendment does not require officers to use the 'least intrusive' or 'even less intrusive' alternatives in search and seizure cases." (Def. Motion at 19, PageID.342). Plaintiff and Plaintiff's expert agree. (Courrege Depo 132:22-133:4; Courrege Report 8-9). Defendants continue, "The only test is whether what the police officers actually did was reasonable." (Def. Motion at 19, PageID.342). Plaintiff agrees with this too. However, a jury could conclude, given

the generally accepted de-escalation principles, that Cpl. Taylor's failure to even attempt to de-escalate was not reasonable in the specific context and totality of the circumstances and therefore his particular choice of force and method of force was unreasonable. Courrege's testimony regarding the de-escalation principles would assist the jury in understanding what de-escalation is in such circumstances that a regular person does not encounter on a regular basis but that a trained officer does encounter.

Defendants argue, "Mr. Courrege's discussion of and weighing of the Graham factors are not matters requiring any specialized knowledge or skill possessed by [him] but rather involve pure legal questions to be determined by the court or, if material facts are in dispute, by a properly instructed jury." (Def. Motion at 9, PageID.332). The determination of what "resisting arrest" is, in the context of levels of control in response to resistive behavior, requires specialized training that non-officer, laypersons don't have. Furthermore, the threat analysis in the context of the use of force factors exceed common sense and are incorporated within police training.

Courrege possesses particular knowledge that would assist a jury in this case. Defendants cite several cases for their position that Courrege's legal conclusions would should not be admissible, including a 9th Circuit district court case, *Dold v. Snohomish Cnty*, 2023 WL 123335 (W.D. Wash. Jan. 5, 2023). However, that court reasoned: "While much of [the expert]'s report contains inadmissible opinions, the Court concludes that the report also contains admissible opinions… The report compares tasers to other forms of force, which could help a jury determine whether the [officers'] tactical response matched the needs of the situation." *Dold* at 3. "These opinions do not discuss the reasonableness of the [officers]' conduct. Rather, they 'permissibly opine as to standard law enforcement practices and whether defendants' conduct is in accord with those practices.'" *Id*. (citations omitted). Accordingly, Courrege's opinions compare Cpl. Taylor's

use of force to other forms of force in the specific context of this case and opine as to standard practices and whether Taylor's conduct was in accord with those practices.

**<u>Courrege's Opinions Regarding the DUI Investigation and Drug Identification</u>**

Defendants also argue that the Court should rule inadmissible Courrege's opinions that the DUI investigation and drug identification weren't consistent with generally accepted police practices and Saraland Police Department Policy and Procedure. They argue his opinions regarding the DUI investigation are based upon insufficient facts or data because Saraland policy is that medical treatment trumps sobriety tests. (Def. Motion at 23, PageID.346). Notwithstanding the other DUI factors Courrege discusses, a reasonable jury can weigh the credibility of the officers' claim that a sobriety test was not able to be performed due to a medical condition. For example, White sat in the back of a police cruiser for an extended period of time before requesting medical assistance. (See videos attached as exhibits to Defendant's Brief in Support of Motion for Summary Judgment (Doc. 69) and Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Doc. 76)).

As for the drug investigation, Defendants argue that Courrege's conclusions regarding the highly unreliable drug field test are only based on his experience and therefore not enough on which to base an admissible opinion. Plaintiff agrees an expert's *ipse dixit* opinion is not enough to be admissible. However, Courrege also bases his opinion on the field test kit instructions themselves, and a reasonable jury could weigh his testimony about the field test kits, along with his experience with them, and conclude that Officer Wells, who had minimal prior experience with the field test kit and who was the charging officer, did not have enough information upon which to charge someone with a felony. (Courrege Report at 15-16).

**Exclusion under Fed. R. Evid. 403**

Defendants also argue that Courrege's opinions should be excluded under Fed. R. Evid. 403. (Def. Motion at 26, PageID.349). However, Defendants do not offer any explanation as to how Courrege's opinions and their probative value might be substantially outweighed by unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Accordingly, Plaintiff also cannot point to any way that Courrege's opinion might lead to any of the undesired consequences contemplated under Rule 403.

**CONCLUSION**

Wherefore, premises considered, Plaintiff respectfully requests the Court deny Defendants' Motion to Exclude Opinion Testimony of Charles Courrege (Doc. 67) and also asks for any further and different relief to which she may be entitled. She respectfully asks that the Court allow Charles "Scott" Courrege to testify to generally accepted standards for police practice, procedure, training, and use-of-force techniques and also respectfully requests the Court allow Courrege to testify whether the officers' conduct violated those standards in this case.

Respectfully submitted,

Attorney for Plaintiff,

/s/ *Joseph S. Dennis*
JOSEPH S. DENNIS (ASB-5590-E61D)
TAYLOR MARTINO, P.C.
455 Saint Louis Street, Suite 2100
Mobile, Alabama 36602
Telephone: (251) 433-3131
Facsimile: (251) 433-4207
Email: joseph@taylormartino.com

**CERTIFICATE OF SERVICE**

This is to certify that I have on this 31st day of March, 2025, electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorneys who have appeared in this case:

*/s/ Joseph S. Dennis*