**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **PATRICIA WHITE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **CIVIL ACTION NO. 1:24-cv-54-TFM-B** |
| | ) |
| **DONALD TAYLOR,** *et al.* | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the *Motion for Summary Judgment* (Doc. 68, filed February 28, 2025) in which Defendants Donald Taylor and Justin Wells petition the Court to enter summary judgment in their favor and against Plaintiff Patricia White for her claims of assault, excessive force, false arrest, and malicious prosecution. Having considered the motion for summary judgment, response, reply, and relevant law, the Court finds the motion is due to be **GRANTED**.

Also, pending before the Court is the *Motion to Exclude Opinion Testimony of Charles Courrege* (Doc. 67) in which Defendants Donald Taylor and Justin Wells petition the Court, pursuant to Fed. R. Evid. 702, exclude the opinion testimony of Plaintiff Patricia White's expert witness, Charles Courrege. Since the Court finds the motion for summary judgment is due to granted, consequently, the motion to exclude is due to be **DENIED as moot**.

## I.    JURISDICTION AND VENUE

The Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question). The Court has personal jurisdiction over the claims in this action because the events that gave rise to this action occurred within this district. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291-92 (11th Cir. 2000) ("Specific jurisdiction arises out of a

party's activities in the forum that are related to the cause of action alleged in the complaint . . . .

General personal jurisdiction, on the other hand, arises from a defendant's contacts with the forum

that are unrelated to the cause of action being litigated.  The due process requirements for general

personal jurisdiction are more stringent than for specific personal jurisdiction, and require a

showing of continuous and systematic general business contacts between the defendant and the

forum state.").  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a

substantial part of the events that gave rise to the claims in this matter occurred in this judicial

district.

No party disputes or debates the Court's jurisdiction or venue, and the Court finds adequate

support for both.

## II.    BACKGROUND

### A.    Factual Background[1]

---

[1] At the summary judgment stage, the facts are "what a reasonable jury could find from the
evidence viewed in the light most favorable to the non-moving party."  *Cantu v. City of Dothan*,
974 F.3d 1217, 1222 (11th Cir. 2020) (quoting *Scott v. United States*, 825 F.3d 1275, 1278 (11th
Cir. 2016)).  "[W]here there are varying accounts of what happened, the proper standard requires
us to adopt the account most favorable to the non-movant."  *Id.* (quoting *Smith v. LePage*, 834
F.3d 1285, 1296 (11th Cir. 2016)).  Therefore, the recitation of facts here are those construed in
favor of Plaintiff.  "The 'facts' at the summary judgment stage are not necessarily the true,
historical facts; they may not be what a jury at trial would, or will, determine to be the facts."  *Id.*

A party is obliged to address an opposing party's assertion of fact that is presented in a motion for
summary judgment pursuant to Fed. R. Civ. P. 56.

> If a party fails to properly support an assertion of fact or fails to properly address
> another party's assertion of fact as required by Rule 56(c), the court may: (1) give
> an opportunity to properly support or address the fact; (2) consider the fact
> undisputed for purposes of the motion; (3) grant summary judgment if the motion
> and supporting materials – including the facts considered undisputed – show that
> the movant is entitled to it; or (4) issue any other appropriate order.

FED. R. CIV. P. 56(e)(1)-(4); *see also* S.D. ALA. CIVLR 56(b) ("The non-movant's brief must
include: (1) all facts relied upon, each supported by a specific, pinpoint citation to the record: (2)

On June 28, 2022, two Saraland police officers, Corporal Justin Wells, defendant, and Sergeant Tywone Johnson, patrolled the area of Shelton Beach extension and Highway 158 in the City of Saraland. Doc. 71-1 at 4, 45. While Corporal Wells waited to merge onto Highway 158, he was flagged down by a driver who frantically waved. *Id.* at 5-6. The driver pointed to a grey SUV and said she was almost run off of the road by the driver of the vehicle, who also swerved into oncoming traffic. *Id.* at 7, 45. The grey SUV was a 2019 Jeep Cherokee that was driven by Plaintiff Patricia White ("Plaintiff" or "White"). Doc. 71-2 at 7-8.

Corporal Wells saw the vehicle proceed to the Highway 158 onramp to southbound I-65 and began to follow White's vehicle. Doc. 71-1 at 7. Approximately forty (40) seconds later, Corporal Wells observed White's vehicle, without warning, drift left in front of a semi-truck that was traveling in the middle lane, which caused the semi-truck to brake suddenly to avoid a collision. *Id.* at 8-9. Corporal Wells activated his vehicle's lights and siren then followed White's vehicle for approximately seven-and-one-half (7.5) miles until she exited the interstate. *Id.* at 9-10, 14. During the pursuit of White's vehicle, Corporal Wells observed the vehicle drift from the inside lane across two (2) lanes of traffic into the outside lane, closely crossing in front of another vehicle that traveled in the outside lane. Pl.'s Ex. C 5:00-5:10. Corporal Wells then drove his vehicle beside White's vehicle, and Sergeant Johnson rolled down his window and yelled at White to pull over her vehicle. Doc. 71-1 at 11-12, 46; Pl.'s Ex. C 5:30-5:55. White did not acknowledge

---

all challenges to the movant's asserted facts; and (3) argument supported by legal authority as appropriate."); S.D. Ala. CivLR 56(d) ("The Court will deem uncontroverted material facts to be admitted solely for the purpose of deciding the motion for summary judgment.").

As the parties acknowledge, the events that are relevant for the plaintiff's claims were video and audio recorded by the dashboard and body cameras of the defendant officers. The parties' separate narratives of undisputed facts are relatively similar and any disputes as to what occurred are mainly limited to how the events are characterized.

Sergeant Johnson's command nor looked at him and continued to drive her vehicle. Doc. 71-1 at 12, 46. White states she believes the flashing lights from the police vehicle triggered a seizure, which she had experienced before. Doc. 78-4 at 9-10.

White's vehicle exited at Springhill Avenue, and as she proceeded under the overpass, Corporal Wells drove his vehicle in front of hers to signal her to stop. Pl.'s Ex. C 7:18-7:40, 8:00; Doc. 71-1 at 15, 46. Two additional police vehicles pulled up behind White's vehicle, one of which was driven by Defendant Donald Taylor, who responded to a radio call to assist Corporal Wells and Sergeant Johnson to stop White's vehicle. Doc. 71-1 at 46; Doc. 71-3 at 3-4.

At White's deposition, she testified she noticed a police vehicle with flashing lights behind her when she proceeded to drive on Highway 158 from Kali Oka Road. Doc. 71-2 at 3. White stated she did not remember much of her drive on the interstate and agreed she was "swerving and driving somewhat erratically" while on the interstate. *Id.* at 3-6, 8-9, 11-13, 31. White stated she did not know the reason why she did not pull over her vehicle for the police. *Id.* at 9.

After Corporal Wells stopped his vehicle in front of White's vehicle, he and Sergeant Johnson got out of their vehicle, and Sergeant Johnson approached the passenger side of White's vehicle and Corporal Wells approached the driver's side. Doc. 71-1 at 16. Sergeant Johnson then attempted to open the passenger door, but it was locked. *Id.* Corporal Wells then tapped on the driver's-side window and attempted to open the driver's-side door. *Id.* Sergeant Johnson and another officer repeatedly told White to exit her vehicle, but she did not comply. *Id.* at 17-18. Sergeant Johnson was able to reach into the vehicle through the passenger-side window to unlock the driver's-side door after White rolled down the window. Doc. 71-3 at 7; Doc. 78-2 at 16. Corporal Wells and Sergeant Johnson tapped on the vehicle's windows and shouted commands at White for approximately fifteen (15) seconds before the vehicle's driver's-side door was opened.

Pl.'s Ex. D 0:19-0:34. Once the door was open, Corporal Taylor told White to exit the vehicle. Doc. 71-3 at 6-7. Corporal Taylor observed White was in a seat belt, so he reached over her, unbuckled it, and brought it across her body then informed her she was under arrest and to relax. *Id.* at 9; Pl.'s Ex. D 9:29-9:34. Corporal Taylor attempted to escort White out of her vehicle with his right hand under her upper left arm and his left hand holding her lower left arms. Doc. 71-3 at 9, 13-14; Pl.'s Ex. A 9:35-9:37. As White began to exit the vehicle, she moved back into the vehicle and grabbed the steering wheel, an act that Corporal Taylor described as active resistance, so he pulled her out of the vehicle by her left arm, and she landed on the pavement then was handcuffed with her hands behind her back. Doc. 71-3 at 13-15, 18-19, 22-24. After White was removed from the vehicle, it began to move forward but stopped suddenly. Doc. 71-1 at 19-20. Corporal Wells speculates the vehicle was still in drive when White was removed from it and a safety mechanism caused it to stop. *Id.* Corporal Taylor explained safety was a concern when White moved back into the vehicle, where she could have reached for a weapon or driven the vehicle. Doc. 71-3 at 9-11.

After Corporal Taylor pulled White from her vehicle, he informed her she was under arrest for attempting to elude law enforcement and directed her to the backseat of his vehicle. *Id.* at 19; Pl.'s Ex. A 10:35. Corporal Taylor read White her Miranda rights, which she acknowledged, then she agreed to answer his questions. Pl.'s Ex. A 15:04-15:26. White denied to Corporal Taylor she was under the influence of alcohol or narcotics, stated she did not know where she should stop her vehicle, was en route to physical therapy, and took blood pressure medication. Pl.'s Ex. A 15:29-16:18. Corporal Taylor asked White whether she was injured to which she described a previous wrist injury but denied she needed immediate medical attention. Pl.'s Ex. A 16:20-16:50, 17:28-17:32.

Corporal Wells then went to speak with White, and she denied to Corporal Wells she was under the influence and had any medical conditions. Doc. 71-1 at 24-25; Pl.'s Ex. E 00:48-00:52. White told Corporal Wells she did not know she needed to stop in the middle of the interstate, which could have caused a wreck. Pl.'s Ex. E 00:31-00:37. Corporal Wells observed White seemed to be confused about the situation and appeared to be under the influence. Doc. 71-1 at 46. During a search of White's vehicle, a clear plastic baggie was found in the glove compartment, which contained twenty-six (26) unmarked, unsealed synthetic capsules of white powder. Doc. 71-1 at 3, 13, 27, 33, 46. Corporal Wells showed White the baggie and its contents, but she denied any knowledge of them, but asked if they were found in the glove compartment. Pl.'s Ex. E 00:52-1:16.

When the powder from the capsules was weighed, it measured 13.2 grams, and field-tested positive for cocaine, which is considered probable cause for arrest pursuant to Saraland's policy. Doc. 71-1 at 27, 29-31, 37, 44, 52-54; Doc. 71-4 at 3-4. At the time of White's arrest, neither Corporal Taylor nor Corporal Wells knew the field test could yield a false positive. Doc. 71-1 at 32; Doc. 71-3 at 28.

Corporal Taylor then went to speak with White, who was still in the backseat of his vehicle, and she complained her left arm felt like it was out of its socket. Pl.'s Ex. A 22:07-22:20. Corporal Taylor transported White to the Saraland police department where she was treated by a Saraland fire medic. Doc. 71-2 at 39.

White was charged with attempting to elude a law enforcement official in violation of Ala. Code § 13A-10-52, possession of a controlled substance with intent to distribute in violation of § 13A-12-211(c), and driving under the influence of a controlled substance in violation of § 32-5A-191. Doc. 71-1 at 46, 66.

White was transported from the Saraland police department to the Mobile Infirmary emergency room in Saraland then back to the police department, from where she was then transported to Mobile County Metro Jail. Doc. 71-2 at 18. White bonded out from the jail on the same day, and her daughter took her to an urgent care facility in Fairhope later that day, where an x-ray was performed that showed a broken left humerus (upper arm). *Id.* at 18-19; Doc. 78-8.

On July 1, 2022, Corporal Wells filed criminal complaints against White for possession and attempting to elude, and warrants for White's arrest were issued on the same date. Doc. 71-2 at 40-41, 45-46. An Alabama Uniform Traffic Ticket and Complaint was completed for a driving while under the influence charge, in violation of Ala. Code § 32-5A-191(a)(3), against White that was sworn to on July 13, 2022. *Id.* at 48. White hired an attorney, who filed on July 6, 2022, a waiver of arraignment in White's criminal case that was before the District Court of Mobile County, Alabama. *Id.* at 24-25, 42.

The Alabama Department of Forensic Sciences ("ADFS") issued a "Toxicological Analysis Report" that was prepared and signed on September 29, 2022, which shows White's blood tests were negative for alcohol and certain controlled substances. Doc. 71-1 at 38-40, 48. The ADFS also issued a "Drug Chemistry Certificate of Analysis" that was prepared and signed on April 18, 2023, which shows the twenty-six capsules that were found in White's vehicle were analyzed and determined to contain tramadol. *Id.* at 41, 50. White obtained a note from a physician, dated April 25, 2023, that states she was provided a prescription for twenty-eight capsules of tramadol on December 28, 2021. Doc. 71-2 at 16-17, 33.

On April 26, 2023, White's driving while under the influence charge was nolle prossed. *Id.* at 49. On May 12, 2023, the State motioned the district court nolle prossed White's charges of possession and attempting to elude that was granted by that court on May 15, 2023. *Id.* at 43-44,

47.

**B.    Procedural Background**

The Complaint in this matter was originally filed in the Circuit Court of Mobile County, Alabama, on February 1, 2024, and timely removed to this Court on February 23, 2024.  Doc. 1; Doc. 2-1 at 6-15.  In the Complaint, Plaintiff brought claims against Defendants Donald Taylor and Justin Wells (collectively, "Defendants"), as well as fictitious defendants, for (1) assault, (2) excessive force, (3) false arrest – possession of cocaine, (4) malicious prosecution – possession of cocaine, (5) false arrest – driving under the influence, (6) malicious prosecution – driving under the influence, (7) false arrest – attempting to elude, and (8) malicious prosecution – attempting to elude.  Doc. 2-1 at 6-15.  For each of claim, Plaintiffs states Defendants acted "under color of law within the meaning of 42 U.S.C. § 1983" and "in violation of her rights under the common law of the State of Alabama, Art. I, §§ 1, 5, and 15 of the Constitution of the State of Alabama, Amds. IV, VIII, and XIV to the Constitution of the United States, and 42 U.S.C. § 1983."  *Id.*  Defendants filed an Answer on March 1, 2024.  Doc. 5.

On June 21, 2024, Plaintiff filed a Motion for Leave to File Amended Complaint, to add factual assertions and damages of loss or diminishment of the ability to earn, as well as a copy of the proposed First Amended Complaint.  Docs. 22, 23.  On June 27, 2024, the Court granted Plaintiff's motion to amend her complaint but found the proposed First Amended Complaint deficient and struck it then permitted her to file an amended complaint that corrected the deficiencies that were identified by the Court.  Doc. 26.  Plaintiff timely filed her Second Amended Complaint[2] on July 17, 2024, and Defendants filed an Answer to Second Amended Complaint on

---

[2] Thought titled, "Second Amended Complaint," it is actually only the first amended complaint because the previously proposed first amended complaint was struck.

July 23, 2024.  Docs. 29, 30.  The Second Amended Complaint dropped the fictitious defendants and asserted eight (8) counts: (Count 1) assault against Corporal Taylor, (Count 2) excessive force against Corporal Taylor, (Count 3) false arrest – possession of cocaine against Defendants, (Count 4) malicious prosecution – possession of cocaine against Defendants, (Count 5) false arrest – driving under the influence against Defendants, (Count 6) malicious prosecution – driving under the influence against Defendants, (Count 7) false arrest – attempting to elude against Defendants, and (Count 8) malicious prosecution – attempting to elude against Defendants.  Doc. 29.

On February 28, 2025, Defendants filed a Motion to Exclude Opinion Testimony of Charles Courrege and a Motion for Summary Judgment and brief and evidentiary material in support of the motion.  Docs. 67-71.  The Court entered a briefing schedule for the two (2) motions. Doc. 73.  The parties timely filed their respective responses, replies, and evidentiary material in support of their filings.  Docs. 76-78, 81, 84-85.  The motions are fully briefed and ripe for review, and the Court finds oral argument is unnecessary to resolve the issues that are presented in the motions.

### III.    STANDARD OF REVIEW

A party in a lawsuit may move a court to enter summary judgment before trial.  FED. R. CIV. P. 56(a), (b).  Summary judgment is appropriate when the moving party establishes there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *see also Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) ("Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'").  "[T]he substantive law will identify which facts are material."  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Ritchey v. S. Nuclear Operating Co.*, 423 F. App'x 955 (11th Cir. 2011) (quoting *Anderson*, 477 U.S. at 248).[3] At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Only disputes about the material facts will preclude the granting of summary judgment. *Id.*

The movant bears the initial burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(e)(1). The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Fed. R. Civ. P. 56, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011)

---

[3] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

(quoting *Anderson*, 477 U.S. at 248). The court must view the facts and draw all reasonable inferences in favor of the non-moving party. *Id.* (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)); *Greenberg*, 498 F.3d at 1265 ("We view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion."). However, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (citations omitted). Conclusory assertions, unsupported by specific facts, that are presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). "Speculation does not create a *genuine* issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249-50 (emphasis in original) (citations omitted). In short, summary judgment is proper after adequate time for discovery and upon motion against a party who fails to make a showing that is sufficient to establish the existence of an element that is essential to that party's case. *Celotex*, 477 U.S. at 322.

Finally, Fed. R. Civ. P. 56(e) also provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56€, the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

## IV.    DISCUSSION AND ANALYSIS

In the motion for summary judgment, Defendants argue they are entitled to qualified

immunity for Plaintiff's claims for false arrest that are brought pursuant to 42 U.S.C. § 1983 because Plaintiff's arrest was based on probable cause or arguable probable cause, and Defendants acted within their discretionary authority when they arrested Plaintiff. Doc. 69. As to the probable cause or arguable probable cause to arrest Plaintiff for attempting to elude, Defendants argue Corporal Wells's dashboard camera shows Plaintiff drove for seven and one-half (7.5) miles after he activated his lights and siren while behind her vehicle, despite median lanes for emergency stops and other available exits where she could have stopped her vehicle. *Id.* at 24-26. As to probable cause or arguable probable cause to arrest Plaintiff for possession of a controlled substance with intent to distribute, Defendants argue the capsules of white powder that were found in Plaintiff's glove compartment field-tested positive for cocaine and were unmarked, unsealed, and contained in a plastic bag, and Plaintiff denied knowledge of the pills, the total weight of which fell within the statutory requirements for possession of cocaine with intent to distribute. *Id.* at 26-27. As to probable cause or arguable probable cause to arrest Plaintiff for driving under the influence of a controlled substances, Defendants argue Corporal Wells followed Plaintiff for seven and one-half (7.5) miles and observed her perform erratic and reckless maneuvers while she drove on the interstate, and after her vehicle was stopped, she appeared confused, slow of speech, and lethargic. *Id.* at 27-28. Defendants also argue they are entitled to qualified immunity for Plaintiff's claims of malicious prosecution that are brought pursuant to 42 U.S.C. § 1983 because they acted within their discretionary authority when they initiated criminal proceedings against Plaintiff, she was never seized, as contemplated by the Fourth Amendment, after the criminal proceedings were commenced against her, and there was probable cause or arguable probable cause to believe she committed the crimes for which she was prosecuted. *Id.* at 28-30. Defendants argue they are entitled to qualified immunity for Plaintiff's claims of use of excessive force, in violation of the

Fourth Amendment, because Corporal Taylor did not use excessive force, as delineated by applicable case law, when he arrested her, and such force was not excessive under clearly established law. *Id.* at 30-38.

As for Plaintiff's claims that are brought for violation of provisions of the Constitution of Alabama, Defendants argue there is not a recognized cause of action for damages for such violations. *Id.* at 39.

Finally, Defendants argue they are entitled to summary judgment as to Plaintiff's state-law claims because she cannot prove her claims for false arrest, malicious prosecution, and assault, and therefore, Defendants are entitled to state-agent immunity. *Id.* at 39-42.

In response, the Court will note first, Plaintiff states she does not concede certain of Defendants' arguments for certain claims but does not offer a response to such. Those arguments relate to claims that include Plaintiff's federal -law claims of false arrest and malicious prosecution, and state-law claims of false arrest and malicious prosecution. Doc. 76 at 17, 30. Further, Plaintiff concedes no authority recognizes a private cause of action for monetary damages that are based on violations of provisions of the Constitution of Alabama. *Id.* at 29.

As to Plaintiff's claim that Corporal Taylor used excessive force, she argues reckless driving, attempting to elude, and driving while under the influence are misdemeanors under Alabama law, she was not an immediate threat to the safety of the officers who were present at the scene, she did not resist arrest, the amount of force that Corporal Taylor used was unnecessary, and she suffered a broken humerus from the use of force. *Id.* at 17-28. Plaintiff does not identify case law with an "exact factual match" to the facts of this case "because so much can be distinguished between this and the regular removing-from-a-vehicle scenario, with or without resistance, passive or active," but argues a law enforcement officer can still be on notice that their

conduct violates established law in novel factual circumstances when their conduct is over-reactive and disproportionate relative to the response of an apprehended person. *Id.* at 28-29. Finally, Plaintiff argues Corporal Taylor is also not entitled to state-agent immunity or qualified immunity for Plaintiff's claims of assault and excessive force because he used more force than was necessary, or reasonably believed was necessary, to arrest Plaintiff. *Id.* at 30-31.

## A.    Federal Claims

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To be protected by qualified immunity, the government official must first demonstrate that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred. *Garcia v. Casey*, 75 F.4th 1176, 1185 (11th Cir. 2023) (citing *Melton v. Abston*, 841 F.3d 1207, 1221 (11th Cir. 2016)); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998). "Once it has been determined that an official was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to establish that qualified immunity is inappropriate." *Garcia*, 75 F.4th at 1185 (quotation omitted).

There is no dispute Defendants acted within their discretionary authority during the relevant events of this matter, so the Court proceeds to the analysis of whether qualified immunity applies.

Courts utilize a two-part framework to evaluate qualified immunity claims. *Castle v. Appalachian Tech. College*, 631 F.3d 1194, 1197 (11th Cir. 2011). The first element is whether the plaintiff's allegations, if true, establish a constitutional violation. *Pearson*, 555 U.S. at 232

(citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).    The second element is whether the constitutional right at issue was "clearly established" at the time of the defendant's alleged misconduct.    *Id*. at 232.    "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful."    *Garcia*, 75 F.4th at 1185 (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)).    "In other words, existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'"    *Wesby*, 583 U.S. at 63 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, (2011)).    This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law."    *Malley v. Briggs*, 475 U. S. 335, 341 (1986).    As to the second prong of the analysis, courts "recognize three sources of law that would put a government official on notice of statutory or constitutional rights: specific statutory or constitutional provisions; principles of law enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in the relevant jurisdiction."    *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1330 (11th Cir. 2007).    Courts will also look beyond caselaw to whether the case at hand is one of "obvious clarity" – i.e., where the officer's conduct "lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to [the official], notwithstanding the lack of fact-specific case law" on point.    *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1355 (11th Cir. 2002)).    In such situations where it is so obvious, courts have repeatedly held that the constitutional violation is clearly established even though there is no decision in a "materially similar preexisting case."    *Cantu*, 974 F.3d at 1235 (citations and internal quotations omitted).    That said, "the clearly established law standard is a demanding one."    *Id*. (citing *Wesby*, 583 U.S. at 63; *City & Cnty. of San Francisco. v. Sheehan*, 575 U.S. 600 (2015)).

The first inquiry may be a mixed question of law or fact, but the second inquiry is purely a question of law. *Hall v. Flournoy*, 975 F.3d 1269, 1275 (11th Cir. 2020). "Both elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever order is deemed most appropriate for the case." *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010) (citing *Pearson*). If a plaintiff fails to establish either one, then the defendant is entitled to qualified immunity.

An officer acts within his discretionary authority when his behavior is "(1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Est. of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018) (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)); *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995). "Our inquiry is two-fold. We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004) (citation omitted). "In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017) (quoting *Holloman*, 370 F.3d at 1266). Therefore, an officer may still be acting within his discretionary authority even if/when violating the constitution. The relevant analysis is "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Harbert Int'l v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (citations and internal quotations omitted).

### 1.    False Arrest

"To succeed on a false arrest claim, a plaintiff must establish (1) a lack of probable cause and (2) an arrest. An arrest—the quintessential seizure of a person—occurs when the government applies physical force to seize a person or asserts lawful authority to which the subject accedes." *Richmond v. Badia*, 47 F.4th 1172, 1180 (11th Cir. 2022) (citing *California v. Hodari D.*, 499 U.S. 621, 624 (1991)).

### a.    Discretionary Authority

Under Alabama law, "An arrest may be made, under a warrant or without a warrant, by any . . . policeman of any incorporated city or town within the limits of the county." ALA. CODE § 15-10-1. "Alabama courts have repeatedly upheld the lawfulness of arrests occurring outside of a specific police jurisdiction when the arrest at issue occurred inside the county where the police jurisdiction lay." *Cooper v. Lister*, 2024 U.S. App. LEXIS 20087, at *6, 2024 WL 3738739, at *2 (11th Cir. Aug. 9, 2024) (citing *Ex parte Pettway*, 594 So. 2d 1196, 1201 n.5 (Ala. 1991), and *Brooks v. State*, 471 So. 2d 511 (Ala. Crim App. 1985)).

Defendants were police officers for the City of Saraland, which is located within Mobile County, Alabama, and Plaintiff was arrested in the City of Mobile, which is also located within Mobile County, Alabama. Therefore, Defendants acted within their discretionary authority when they arrested Plaintiff, which is not disputed.

### b.    Probable Cause or Arguable Probable Cause

When the government has probable cause to arrest someone, a false arrest claim necessarily fails. *Crocker v. Beatty*, 995 F.3d 1232, 1245 (11th Cir. 2021). "[T]he correct legal standard to evaluate whether an officer had probable cause to seize a suspect is to ask whether a reasonable officer could conclude that there was a substantial chance of criminal activity." *Washington v. Durand*, 25 F.4th 891, 902 (11th Cir. 2022) (quotation and internal modifications omitted).

"Although 'an arrest made without probable cause violates the Fourth Amendment,' an officer is entitled to qualified immunity if he has 'arguable probable cause.'"  *Badia*, 47 F.4th at 1181 (11th Cir. 2022) (quoting *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998)); *see also Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023) (also discussing that an officer need not have actual probable cause, but only arguable probable cause).

> An officer has arguable probable cause if "a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests."  [*District of Columbia v.* ]*Wesby*, 138 S. Ct. [577,] 593 [(2018)].  An officer lacks arguable probable cause only if "the state of the law on the date of the alleged misconduct makes it obvious that the [officer's] acts violated the plaintiff's rights in the specific set of circumstances at issue."  *Washington* [*v. Howard*], 25 F.4th [891,] 903 [(11th Cir. 2022)] (quotation omitted).  Accordingly, "the dispositive question is whether it was already clearly established, as a matter of law, that at the time of Plaintiff's arrest, an objective officer could not have concluded reasonably that probable cause existed to arrest Plaintiff under the particular circumstances Defendants confronted."  *Gates v. Khokhar*, 884 F.3d 1290, 1303 (11th Cir. 2018) (emphasis omitted).

*Garcia*, 75 F.4th at 1186.

### i.    Attempting to Elude Law Enforcement

Under Alabama law, it is "unlawful for a person while operating a motor vehicle on a street, road, alley, or highway in this state, to intentionally flee or attempt to elude a law enforcement officer after having received a signal from the officer to bring the vehicle to a stop."  ALA. CODE § 13A-10-52(b).

As the images from Corporal Wells's dashboard camera show, Plaintiff continued to operate her vehicle for seven-and-one-half (7.5) miles after Corporal Wells activated his vehicle's lights and siren, during which he drove his vehicle beside Plaintiff's vehicle and Sergeant Johnson yelled at her to pull over her vehicle.

Based on those events, Defendants had probable cause to arrest Plaintiff for attempting to elude law enforcement, in violation of Ala. Code § 13A-10-52(b).  Defendants also certainly meet

the lower standard for arguable cause. Therefore, Defendants are entitled to qualified immunity as to the false arrest claim for that charge.

### ii.    Possession of a Controlled Substances with Intent to Distribute

Under Alabama law, a person commits the crime of unlawful possession with intent to distribute a controlled substance when "except as otherwise authorized by law, he or she knowingly possesses any of the following quantities of a controlled substances: (1) More than eight grams, but less than 28 grams, of cocaine or of any mixture containing cocaine." ALA. CODE § 13A-12-211(c)(1).

When the powder from the capsules that were found in Plaintiff's vehicle were weighed, they measured 13.2 grams, and field-tested positive for cocaine, which is considered probable cause for arrest pursuant to Saraland's policy. "[N]o case at any level, in any court, has established (clearly or otherwise) that field drug tests cannot, because of possible false positive, support probable cause." *Brown v. Sirchie Acquisition Co., LLC*, Civ. Act. No. 1:16-CV-175-SCJ, 2017 U.S. Dist. LEXIS 216289, at *29-*30, 2017 WL 4082690, at *12 (N.D. Ga. Feb. 17, 2017). And, certainly, Plaintiff has cited no case that supports an argument that field drug tests cannot support probable cause because they may produce a false positive.

Based on those events, Defendants had probable and arguable probable cause to arrest Plaintiff for possession of a controlled substances with intent to distribute, in violation of Ala. Code § 13A-12-211, and therefore, are entitled to qualified immunity as to the false arrest claim for that charge.

### iii.    Driving While Under the Influence of a Controlled Substance

Under Alabama law, it is a crime for a person to "drive or be in actual physical control of any vehicle while: . . . [u]nder the influence of a controlled substance to a degree which renders

him or her incapable of safely driving."  ALA. CODE § 32-5A-191(a)(3).

Corporal Wells observed Plaintiff perform erratic and dangerous maneuvers on the interstate, and after Plaintiff's vehicle was stopped, the officers at the scene observed she seemed confused.

Based on those events, Defendants certainly had probable and/or arguable probable cause to arrest Plaintiff for driving while under the influence of a controlled substance, in violation of Ala. Code § 32-5A-191(a)(3), and therefore, are entitled to qualified immunity as to the false arrest claim for that charge.

### 2.    Malicious Prosecution

To prove a Fourth Amendment malicious-prosecution claim in our Circuit, a plaintiff must establish four elements: (1) the plaintiff was seized under legal process; (2) the legal process justifying the plaintiff's seizure was constitutionally infirm; (3) the suit or proceeding terminated in the plaintiff's favor; and (4) the seizure would not otherwise be justified without legal process. *See* [*Butler v. Smith*, 85 F.4th 1102,] 1111–12 [(11th Cir. 2023)] (outlining the relevant elements and how they merge); *Washington v. Howard*, 25 F.4th 891, 898 (11th Cir. 2022) (identifying a simplified two-step test that breaks down into these elements).

*Gervin v. Florence*, 139 F.4th 1236, 1248 (11th Cir. 2025).

### a.    Discretionary Authority

There is no dispute that Defendant acted within their discretionary authority when they obtained an arrest warrant for Plaintiff.  *See generally Whiting v. Traylor*, 85 F.3d 581, 585 (11th Cir. 1996) ("Obtaining an arrest warrant is one of the initial steps of a criminal prosecution.").

### b.    Probable Cause or Arguable Probable Cause

Further, "the law requires that a warrant for an arrest be supported by sufficient information to establish probable cause."  *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019) (citations and internal quotation marks omitted).

As discussed above, Defendant had probable cause or arguable probable cause to seek

arrest warrants for each of the criminal charges against Plaintiff, since the toxicology report for Plaintiff's blood tests, which showed she was negative for alcohol and controlled substances, and the chemical analysis report for the capsules that were found in her glove compartment, which determined they contained tramadol, were not issued until months after the arrest warrants were executed. When the warrants were issued, they were well supported and proper.

Accordingly, Plaintiff has not shown an unlawful seizure for her malicious prosecution claims, and therefore, Defendants are entitled to qualified immunity as to those claims.

### 3.    Excessive Force

The Eleventh Circuit has "repeatedly recognized that when making a custodial arrest, 'some use of force . . . is necessary and altogether lawful.'" *Huebner v. Bradshaw*, 935 F.3d 1183, 1191 (11th Cir. 2019) (quoting *Durruthy v. Pastor*, 351 F.3d 1080, 1094 (11th Cir. 2003)).

> Excessive force claims in the context of an arrest or investigatory stop are judged under the Fourth Amendment's objective reasonableness standard. *Graham* [*v. Connor*], 490 U.S. [386,] 395–96, 109 S. Ct. 1865 [(1989)]. In reviewing the use of force, courts balance the nature and quality of the intrusion on the individual against the government justification for using force. *Id.* at 396, 109 S. Ct. 1865. In doing so, we consider: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.* We also consider the justification for the application of force, the relationship between the justification and the amount of force used, and the extent of any injury inflicted. *Saunders v. Duke*, 766 F.3d 1262, 1267 (11th Cir. 2014).

> Applying these factors, we have elucidated some general principles. As relevant here, we have held that "unprovoked force against a non-hostile and non-violent suspect who has not disobeyed instructions violates that suspect's rights under the Fourth Amendment." *Fils v. City of Aventura*, 647 F.3d 1272, 1289 (11th Cir. 2011). We have also held that the absence of a legitimate law enforcement justification for using force is indicative of excessive force. *See Lee* [*v. Ferraro*], 284 F.3d [1188,] 1198 [(11th Cir. 2002)] (officer not entitled to qualified immunity for excessive force where the court could "discern no reason, let alone any legitimate law enforcement need" for the force); *Stephens v. DeGiovanni*, 852 F.3d

1298, 1308 (11th Cir. 2017) (officer not entitled to qualified immunity from excessive force claim where he "unexpectedly slapped" a Bluetooth device from a plaintiff's ear and subsequently punched him in the chest "for no reason").

*Badia*, 47 F.4th at 1182.

"The "reasonableness" of a particular use of force must be judged from the perspective a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment." *Id.* (internal quotations marks and citation omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgment—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.*

### a. Discretionary Authority

It is undisputed Corporal Taylor acted within his discretionary authority when he arrested Plaintiff. *See Telfare v. City of Huntsville*, 841 So. 2d 1222, 1228 (Ala. 2002) ("Generally, arrests and attempted arrests are classified as discretionary functions.").

### b. Constitutional Violation

Here, the events of Plaintiff's arrest are captured by Defendants' body and dashboard cameras, which show Plaintiff continued to operate her vehicle for approximately seven-and-one-half (7.5) miles after Corporal Wells activated his vehicle lights and siren and, during that time, drove erratically and dangerously, which threatened the safety of her and others who traveled on the interstate. Plaintiff continued to ignore Corporal Wells's vehicle lights and siren even after he maneuvered his vehicle next to hers and Sergeant Johnson yelled at her to pull over. After Plaintiff stopped her vehicle, she was repeatedly told to exit her vehicle but did not comply. Plaintiff's

vehicle doors were locked when the officers approached and approximately fifteen (15) seconds elapsed between when Sergeant Johnson tapped on the vehicle's windows and shouted commands to Plaintiff and when the driver's-side door was opened. Once the door was open, Corporal Taylor told Plaintiff to exit the vehicle, but she did not comply. Corporal Taylor observed Plaintiff was in a seat belt, so he reached over her, unbuckled it, brought it across her body, informed her she was under arrest, then attempted to guide her out of the vehicle. Plaintiff then moved back into the vehicle and grabbed the steering wheel, an act which a reasonable law enforcement officer could interpret to be resisting arrest. Corporal Taylor then pulled Plaintiff out of her vehicle by her arm, and she landed on the pavement then he handcuffed her hands behind her back.

Plaintiff did not comply with the officers' demands and Corporal Taylor's use of force, which was employed after he attempted to guide Plaintiff out of her vehicle, occurred after she moved back into the vehicle, an act that Corporal Taylor could reasonably interpret to be resisting arrest. Corporal Taylor's use of force was limited to pulling Plaintiff by her arm to the pavement then he commenced to handcuff her and escort her to his vehicle. Based on those events, the Court finds Corporal Taylor did not use excessive force when he arrested Plaintiff.

The Court finds the case of *Senko v. Jackson* helpful to decide this matter. 2023 U.S. App. LEXIS 6104, 2023 WL 2518367 (11th Cir. Mar. 15. 2023). The Eleventh Circuit summarized the facts of *Senko* as follows:

> The facts as shown on video are that an officer came upon a car stopped in the lane of traffic with brake lights on. Officers observed Senko passed out in the driver's seat of the car. When officers opened the doors of Senko's car, Senko, admittedly disoriented, took his foot off the brake instead of complying with the officers' commands, and the car began moving forward. Officer Jackson had to put the car in park to stop it. Then, despite being asked over twenty times, Senko did not comply with the MBPD's orders to get out of the car. Officer Jackson attempted to pull Senko from the Camry by his arm, but Senko was physically non-compliant. So Officer Jackson grabbed Senko by the ankles and pulled him from the driver's

seat.  Once Senko was away from the Camry, officers rolled Senko onto his stomach and handcuffed him with his hands behind his back.

*Senko*, 2023 U.S. App. LEXIS 6104, at *7-*8, 2023 WL 2518367, at *3.  Ultimately, the Eleventh Circuit found "Senko was not complying with officers' demand and the officers' use of force to remove Senko from the vehicle and effectuate his arrest was not excessive."  *Senko*, 2023 U.S. App. LEXIS 6104, at *8, 2023 WL 2518367, at *3.

Since Plaintiff has not shown a constitutional violation for Corporal Taylor's use of force, Corporal Taylor is entitled to qualified immunity as to those claims.

**B.    State-Law Claims**

The Alabama Supreme Court stated the test for state-agent immunity as follows:

"A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
(1) formulating plans, policies, or designs; or
(2) exercising his or her judgment in the administration of a department or agency of government, including but not limited to, examples such as:
    (a) making administrative adjudications;
    (b) allocating resources;
    (c) negotiating contracts;
    (d) hiring, firing, transferring, assigning, or supervising personnel; or
(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity

(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or

(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."

*Ex parte Butts*, 775 So. 2d 173, 177-78 (Ala. 2000) (emphasis omitted) (quoting *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000)); *see also* ALA. CODE § 36-1-12 (codifying the rule that governs State-agent immunity and is stated in *Ex parte Cranman*).

> [The Alabama Supreme Court] has established a "burden shifting" process when a party raises the defense of State-agent immunity. *Giambrone v. Douglas*, 874 So. 2d 1046, 1052 (Ala. 2003). In order to claim State-agent immunity, a State agent bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity. *Giambrone*, 874 So. 2d at 1052; *Ex parte Wood*, 852 So. 2d 705, 709 (Ala. 2002). If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority. *Giambrone*, 874 So. 2d at 1052; *Wood*, 852 So. 2d at 709; *Ex parte Davis*, 721 So. 2d 685, 689 (Ala. 1998). "A State agent acts beyond authority and is therefore not immune when he or she 'fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.'" *Giambrone*, 874 So. 2d at 1052 (quoting *Ex parte Butts*, 775 So. 2d [at] 178 [ ].).

*Ex parte Estate of Reynolds*, 946 So. 2d 450, 452 (Ala. 2006).

> "'"Willfulness" is the conscious doing of some act or omission of some duty under knowledge of existing conditions accompanied with a design or purpose to inflict injury. Instruction 29.01, <u>Alabama Pattern Jury Instructions-Civil</u> (2d ed. 1993); *see also Roe v. Lewis*, 416 So. 2d 750, 754 (Ala. 1982) (Willfulness 'denotes an intention to cause an injury'). Similarly, malice is defined as '[t]he intent, without justification or excuse, to commit a wrongful act . . . .' BLACK'S LAW DICTIONARY, 968 (7th ed. 1999)."

*Ex parte City of Montgomery*, 272 So. 3d 155, 168 n.5 (Ala. 2018) (quoting *Ex parte Nall*, 879 So. 2d 541, 546 (Ala. 2003)). "Bad faith" is a "[d]ishonesty of belief, purpose, or motive." *Bad Faith*, BLACK'S LAW DICTIONARY (11th ed. 2019).

### 1. False Arrest

A false arrest requires proof "'that the defendant caused [her] to be arrested without probable cause.'" *Walker v. City of Huntsville,* 62 So.3d 474, 493 (Ala.2010) (quoting *Higgins v. Wal–Mart Stores, Inc.,* 512 So.2d 766 (Ala.1987)). "[F]or a detention to be valid, the officer must reasonably, and in good faith, suspect the individual detained of being involved in some form of criminality." *Walker,* 62

So.3d at 493 (quoting *Higgins,* 512 So.2d at 768).  "Section 6–5–170, Ala. Code 1975, defines false imprisonment as 'the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty.'" *Walker,* 62 So.3d at 492. . . . "[P]robable cause exists where the facts and circumstances within the officer's knowledge and of which he has reasonable trustworthy information are sufficient to warrant a man of reasonable caution in the belief that an offense has been or is being committed."  *Walker,* 62 So.3d at 492 (internal quotation marks omitted).

*Ex parte Harris*, 216 So. 3d 1201, 1213 (Ala. 2016).

### a.    Discretionary Function

It is undisputed Defendants acted within their discretionary authority when they arrested Plaintiff.  *See Telfare*, 841 So. 2d at 1228 ("Generally, arrests and attempted arrests are classified as discretionary functions.").

### b.    Probable Cause or Arguable Probable Cause

As discussed above, Defendants had probable or arguable probable cause to arrest Plaintiff, and therefore, Plaintiff cannot prove her false arrest claim and, in turn, cannot show Defendants acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority.  Accordingly, Defendants are entitled to state-agent immunity as to the false arrest claims.

### 2.    Malicious Prosecution

Under Alabama law, to assert a malicious-prosecution claim, a plaintiff must prove:

"'(1) [T]hat there was a judicial proceeding initiated by the present defendant; (2) that it was initiated without probable cause; (3) that it was initiated with malice on the part of the present defendant; (4) that that judicial proceeding was terminated in favor of the present plaintiff; and (5) that the present plaintiff suffered damage from the prosecution of that earlier action.'"  *Ex parte Tuscaloosa Cty.,* 796 So.2d at 1106 (quoting *Kmart Corp. v. Perdue,* 708 So.2d 106, 108 (Ala.1997)). . . . Probable cause in the context of a malicious-prosecution claim is defined as "'"[a] reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged."'"  *Moon,* 2 So.3d at 846 (quoting *Eidson v. Olin Corp.,* 527

So.2d 1283, 1285 (Ala.1988), quoting in turn *Parisian Co. v. Williams,* 203 Ala. 378, 383, 83 So. 122, 127 (1919)).

*Ex parte Harris*, 216 So. 3d at 1214.

### a.    Discretionary Function

It is undisputed Defendants performed a discretionary function when they obtained an arrest warrant for Plaintiff.  *See generally Whiting*, 85 F.3d at 585 ("Obtaining an arrest warrant is one of the initial steps of a criminal prosecution.").

### b.    Probable Cause or Arguable Probable Cause

As discussed above, Defendants had probable or arguable probable cause to obtain an arrest warrant for Plaintiff, and therefore Plaintiff cannot prove her malicious prosecution claim and, in turn, cannot show Defendants acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority.   Accordingly, Defendants are entitled to state-agent immunity as to the malicious prosecution claims.

### 3.    Assault

"The plaintiff in an action alleging assault and battery must prove '(1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner.'"  *Harper v. Winston County,* 892 So.2d 346, 353 (Ala.2004) (quoting *Ex parte Atmore Cmty. Hosp.,* 719 So.2d 1190, 1193 (Ala.1998)).  However, this Court has stated: "In making the arrest, a police officer may use reasonable force and may be held liable only if more force is used than is necessary to effectuate the arrest." *Franklin v. City of Huntsville,* 670 So.2d 848, 852 (Ala.1995), citing § 13A–3–27(a), Ala. Code 1975 ("A peace officer is justified in using that degree of physical force which he reasonably believes to be necessary, upon a person in order: (1) To make an arrest for a misdemeanor, violation or violation of a criminal ordinance . . . unless the peace officer knows that the arrest is unauthorized.").

*Walker*, 62 So. 3d at 494.

### a.    Discretionary Function

It is undisputed Corpora Taylor acted within his discretionary authority when they arrested Plaintiff. *See Telfare*, 841 So. 2d at 1228 ("Generally, arrests and attempted arrests are classified as discretionary functions.").

### b.    Reasonable Force

As discussed above, when Corporal Taylor arrested Plaintiff, he did not use more force than was necessary to effect the arrest. *Cf. id.* ("The issue decided by the federal court is, therefore, identical to the issue raised by Walker's assault and battery claim. The issue was actually determined by the federal court and was necessary to its judgment on Walker's § 1983 claim alleging an excessive use of force."). Therefore, Corporal Taylor cannot be held liable for assault in this instance and, in turn, is entitled to state-agent immunity as to the assault claims.

### C.    State Constitutional Claims

Plaintiff concedes her claims for damages that are based on violations of the Constitution of Alabama are due to be dismissed. Indeed, a private cause of action for monetary damages that is based on violations of the provisions of the Constitution of Alabama has not been recognized by the Supreme Court of Alabama. *Matthews v. Ala. Agric. & Mech. Univ.*, 787 So. 2d 691, 698 (Ala. 2000).

### D.    Motion to Exclude

The Court has found Defendants are entitled to qualified and state-agent immunity as to Plaintiff's claims, but even considering Plaintiff's expert report, the Court would still reach the same conclusion as to immunity. Therefore, the motion to exclude is due to be **DENIED as moot**.

## V.    CONCLUSION

Accordingly, the Motion for Summary Judgment (Doc. 68) is **GRANTED**, and Plaintiff Patricia White's claims that she brings against Defendants Donald Taylor and Justin Wells are

**DISMISSED with prejudice**.   Consequently, the Motion to Exclude Opinion Testimony of Charles Courrege (Doc. 67) is **DENIED as moot**.

A separate judgment will issue pursuant to Fed. R. Civ. P. 58.

**DONE** and **ORDERED** this 25th day of September 2025.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE