700 Fed.Appx. 949
This case was not selected for publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also U.S. Ct. of App. 11th Cir. Rule 36-2.
United States Court of Appeals, Eleventh Circuit.

Keith AVERY, Plaintiff-Appellee,
v.
Demarcus DAVIS, BPD, Birmingham, City of, The, Defendants-Appellants.

No. 16-16937
|
Non-Argument Calendar
|
(July 6, 2017)

**Synopsis**
**Background:** Arrestee brought § 1983 action against police officer, asserting false arrest and excessive force in violation of the Fourth Amendment and excessive force in violation of state law. The United States District Court for the Northern District of Alabama, L. Scott Coogler, J., denied officer's motion for summary judgment, and he appealed.

**Holdings:** The Court of Appeals held that:

[1] officer had arguable probable cause to make arrest for affray, and thus officer was entitled to qualified immunity from false arrest claim;

[2] officer was entitled to qualified immunity from excessive force claim; and

[3] fact issues precluded summary judgment on state-agent immunity defense to state law excessive force claim.

Ordered accordingly.

**Procedural Posture(s):** On Appeal; Motion for Summary Judgment.

West Headnotes (3)

**[1]** **Civil Rights** — Sheriffs, police, and other peace officers

Officer had arguable probable cause to make arrest for affray under Alabama law, and thus was entitled to qualified immunity from arrestee's § 1983 false arrest claim, where city code made it illegal for two or more persons to engage in any fight or use violence in any public place, and according to arrestee's own account, before he was arrested there was a fight in a retail store parking lot and gunshots were fired, and he was closely following someone who had been on other side of fight, so it could have appeared to officer that he was trying to continue fight. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983..

EXHIBIT
1

1 Case that cites this headnote

**[2]** **Civil Rights** Sheriffs, police, and other peace officers

A reasonable officer could have believed that punching arrestee while attempting to arrest him for his involvement in a brawl was not excessive when confronted with the same set of facts, and thus officer was entitled to qualified immunity from arrestee's § 1983 excessive force claim, where officer allegedly saw a brawl break out between two groups of young men, saw one of them, arrestee, chasing someone from the other group, apparently in effort to continue the brawl, and then saw arrestee continuing to run full speed in his direction despite fact that his police car's blue lights were illuminated, and despite fact that he was wearing a police uniform. U.S. Const. Amend. 4; 42 U.S.C.A. § 1983.

1 Case that cites this headnote

**[3]** **Summary Judgment** Immunity

Genuine issues of material fact existed as to whether police officer stepped into arrestee's path as he was running from a brawl and punched arrestee in the face without any warning, whether before striking arrestee, officer attempted to avoid using force, and whether officer did not attempt to use some lesser amount of force, precluding summary judgment on officer's state-agent immunity defense to arrestee's state law excessive force claim. Ala. Code § 13A-3-27.

1 Case that cites this headnote

**Attorneys and Law Firms**

***950** Derrick Kendall Collins, Derrick Collins Attorney at Law, LLC, Birmingham, AL, for Plaintiff–Appellee.

James Darnell Love, City of Birmingham Law Department, Birmingham, AL, for Defendants–Appellants.

Appeal from the United States District Court for the Northern District of Alabama, D.C. Docket No. 2:14-cv-02301-LSC

Before ED CARNES, Chief Judge, JULIE CARNES, and JILL PRYOR, Circuit Judges.

**Opinion**

PER CURIAM:

Keith Avery claims that Demarcus Davis, an officer with the Birmingham Police Department, punched him in the face without warning or provocation. Rejecting Davis' assertion of qualified immunity and state law immunities, the district court denied his motion for summary judgment. This is Davis' appeal.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

"We relate the facts—as we must at this stage of the litigation—in the light most favorable to [Avery]." Goodman v. Kimbrough, 718 F.3d 1325, 1329 (11th Cir. 2013). Avery attended a party at a Birmingham YMCA that became violent. After the police came and shut down the party, Avery and two of his friends went across the street to a Walmart parking lot to wait for someone to pick them up. Meanwhile, other partygoers—not including Avery or his two friends—went inside the Walmart and started knocking over shelves and stealing merchandise, and Walmart asked the police to help clear the store. Davis was one of the officers who responded to that request.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

After helping clear the store, Davis returned to his police car in the Walmart parking lot, which had its flashing blue lights illuminated. While there, Davis saw a group of unknown young men approach Avery's group and attack one of Avery's friends. Moments later gunshots rang out from an unknown location, and Avery's group and the assailants scattered. In the chaos that followed, Avery happened to be running behind one of the assailants. Although he was simply trying to escape the gunfire, Avery admits that it could have appeared to Davis that he was chasing the assailant to continue the fight.

Avery and the assailant ran in Davis' direction. As they approached, Davis, wearing his police uniform, attempted to get between them. Avery was in the midst of an adrenaline rush and did not notice Davis' presence until Davis leveled him with a punch to the jaw. The punch briefly knocked Avery out. When Avery regained consciousness, he attempted to stand up but Davis took him back to the ground, put his knee on Avery's back, and handcuffed Avery. Avery was arrested for committing an "affray," which is a criminal misdemeanor for fighting in public. Avery later needed surgery to repair his jaw.[1]

Avery filed a complaint, asserting claims under 42 U.S.C. § 1983 for violations of his federal constitutional rights and asserting numerous state law claims. The district court denied Davis' motion for summary judgment, concluding that qualified immunity did not shield him from the § 1983 claims and state law immunities did not shield him from the state law claims.[2]

## ***951** II. APPELLATE JURISDICTION

Before we reach the merits, we must ensure that we have jurisdiction to hear this appeal. Winfrey v. Sch. Bd., 59 F.3d 155, 157 (11th Cir. 1995). There is no doubt that we have jurisdiction to consider an interlocutory appeal from a district court order denying qualified immunity. Id. at 158. We also have jurisdiction to entertain an interlocutory appeal from "an order denying state official ... immunity ... if state law defines the immunity at issue to provide immunity from suit rather than just a defense to liability." Parker v. Am. Traffic Sols., Inc., 835 F.3d 1363, 1367 (11th Cir. 2016).

In challenging the district court's denial of summary judgment on the state law claims, Davis asserts two types of state law official immunity. The first, "state-agent immunity," is immunity from suit under Alabama law. See Ex parte Wood, 852 So.2d 705, 709 (Ala. 2002). By contrast, Alabama courts discuss the second type, immunity under section 13A-3-27 of the Alabama Code, as a defense to liability. See Walker v. City of Huntsville, 62 So.3d 474, 494 (Ala. 2010) (describing section 13A-3-27 immunity as the principle that "[a] police officer ... may be held liable only if more force is used than is necessary to effectuate the arrest"); Franklin v. City of Huntsville, 670 So.2d 848, 852 (Ala. 1995) (same); Campbell v. Sims, 686 So.2d 1227, 1229 (Ala. Civ. App. 1996) (same). They have never held that it provides immunity from suit. See, e.g., Walker, 62 So.3d at 494.

As a result, we have jurisdiction to consider the § 1983 qualified immunity issue and to consider the state-agent immunity issue. See Parker, 835 F.3d at 1367. But we do not have jurisdiction to consider the section 13A-3-27 immunity issue, so we dismiss that portion of Davis' appeal. See id. at 1367-68.

## III. THE MERITS

### A. Qualified Immunity

Davis contends that the district court's qualified immunity determination was erroneous. "We review de novo a district court's denial of summary judgment based on qualified immunity, applying the same legal standards that governed the district court." Feliciano v. City of Miami Beach, 707 F.3d 1244, 1247 (11th Cir. 2013). "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

constitutional rights of which a reasonable person would have known." Brown v. City of Huntsville, 608 F.3d 724, 733 (11th Cir. 2010) (quotation marks omitted).

The qualified immunity inquiry comprises two questions.[3] Id. at 734. One is whether the defendant's conduct violated the plaintiff's constitutional rights. Id. The other is whether at the time of the incident the constitutional right that was allegedly violated was "clearly established" by a decision of the Supreme Court, this Court, or the highest court of the state in which the conduct occurred. See Terrell v. Smith, 668 F.3d 1244, 1256 (11th Cir. 2012); Brown, 608 F.3d at 734. "Both elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever order is ***952** deemed most appropriate for the case." Brown, 608 F.3d at 734.

1. False Arrest

**[1]** Avery argues that Davis arrested him without probable cause, in violation of the Fourth Amendment. "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." Id. But to be entitled to qualified immunity, an arresting officer need only have "arguable" probable cause, which exists where "reasonable officers in the same circumstances and possessing the same knowledge as the [defendant] could have believed that probable cause existed to arrest [p]laintiff," whether or not there was actually probable cause to do so. Id. at 734-35.

Determining whether an officer had arguable probable cause to arrest someone requires us to look to "the elements of the alleged crime and the operative fact pattern." Id. at 735. Avery was arrested for committing an affray. The Birmingham City Code section that defines "affray" provides that:

> It shall be unlawful for two (2) or more persons to engage in any fight or use any blows or violence towards each other in any public place to the disturbance of others.

Birmingham, Ala., Code § 11-6-9(a).

According to Avery's own account, before he was arrested there was a fight in the Walmart parking lot and gunshots were fired. He was closely following someone who had been on the other side of the fight, and he admitted that it could have looked to Davis like he was trying to continue the fight. In light of those facts, reasonable officers in Davis' position could have believed that probable cause existed to arrest Avery for an affray. See Brown, 608 F.3d at 734-75. As a result, Davis is entitled to qualified immunity as to Avery's § 1983 false arrest claim.

2. Excessive Force

**[2]** Avery also argues that Davis violated his Fourth Amendment rights by using excessive force in effecting the arrest. "The Fourth Amendment's guarantee against unreasonable searches and seizures includes the right to be free from the use of excessive force in the course of an arrest." Saunders v. Duke, 766 F.3d 1262, 1266-67 (11th Cir. 2014). To decide whether a use of force was excessive, courts determine whether it was "objectively reasonable," as judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 1267. But even if an officer's use of force was excessive, he is shielded by qualified immunity "if an objectively reasonable officer in the same situation could have believed the use of force was not excessive." Brown, 608 F.3d at 738; see also Jean-Baptiste v. Gutierrez, 627 F.3d 816, 821 (11th Cir. 2010) (explaining

that an officer is entitled to qualified immunity unless application of the objective excessive force standard "would inevitably lead every reasonable officer in [his] position to conclude the force was unlawful").

Avery argues a reasonable officer could not have believed that punching him was not excessive because our decision in Brown, which was issued two years before the events at issue here, clearly established that "gratuitous use of force when a criminal suspect is not resisting arrest constitutes excessive force." 608 F.3d at 738. But "broad general proposition[s]" like that one are not enough to clearly establish the law; instead, the "question is whether the violative nature of particular ***953** conduct [was] clearly established." Mullenix v. Luna, 577 U.S. ——, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015).

Our Brown decision and other "gratuitous use of force" cases could not have established for every reasonable officer that Davis' particular conduct was unconstitutional because those cases all involved a distinct factual context—a suspect who was complying with the officer's orders. See Brown, 608 F.3d at 739 (noting that the plaintiff "had submitted to [the defendant's] authority, was getting out of the car to be arrested, and posed no threat" when the defendant pepper sprayed her and then "slam[med] her to the pavement"); Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008) (denying qualified immunity to an officer who punched the plaintiff while the plaintiff "was handcuffed and not struggling or resisting"); Lee v. Ferraro, 284 F.3d 1188, 1199 (11th Cir. 2002) ("[A] reasonable officer could not possibly have believed that he ... had the lawful authority to take [the plaintiff] to the back of her car and slam her head against the trunk after she was arrested, handcuffed, and completely secured, and after any danger to the arresting officer as well as any risk of flight had passed."). In contrast to those cases, Avery was not compliant as he ran through the parking lot. Brown and the other cited cases have no relevance to the situation that confronted Davis. See Mullenix, 136 S.Ct. at 308 ("[S]pecificity is especially important in the Fourth Amendment context, where the Court has recognized that [i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.") (quotation marks omitted). [4]

Viewing the evidence in the light most favorable to Avery, Davis saw a brawl break out between two groups of young men. He saw one of them, Avery, chasing someone from the other group, apparently in an effort to continue the brawl. Davis saw Avery continuing to run full speed in his direction despite the fact that his police car's blue lights were illuminated, and despite the fact that he was wearing a police uniform. "An objectively reasonable officer" in Davis' situation, confronted with that set of facts, "could have believed the use of force was not excessive." See Brown, 608 F.3d at 738. As a result, the district court erred in denying Davis qualified immunity as to the excessive force claim. [5]

***954** B. State-Agent Immunity

**[3]** In addition, Davis contends that the district court should have dismissed Avery's state law claims because he is entitled to state-agent immunity under Alabama law. We "review de novo the denial of official immunity." Bailey v. Wheeler, 843 F.3d 473, 480 (11th Cir. 2016). State-agent immunity provides that officers are immune from civil suits for acts "arising from the enforcement of the criminal laws of [Alabama], including ... arresting or attempting to arrest persons." Morton v. Kirkwood, 707 F.3d 1276, 1285 (11th Cir. 2013) (quoting Ex parte Butts, 775 So.2d 173, 178 (Ala. 2000)). Davis was in the course of arresting Avery when he punched him, so ordinarily that immunity would apply. However, "a police officer loses [state-agent] immunity when he 'acts willfully, maliciously, fraudulently, in bad faith, beyond his ... authority, or under a mistaken interpretation of the law.' " Id. (quoting Butts, 775 So.2d at 178).

As we have explained, the excessive force qualified immunity inquiry is an objective inquiry based on what a reasonable officer "could have believed." Brown, 608 F.3d at 738. By contrast, determining whether an officer's use of force was willful for state-agent immunity purposes is a subjective inquiry that requires assessing the officer's state of mind at the moment of the use of force. See Ex parte Essary, 992 So.2d 5, 9 (Ala. 2007) ("[W]anton or willful misconduct is characterized as such by the state of mind with which the act or omission is done or omitted."). Alabama courts have explained that for a defendant's actions to rise to the level of willfulness, "[t]here must be a knowledge of the danger together with a design or purpose to inflict injury"; that is, "it must be shown that [the act] was intentionally and designedly done." Sutherland v. Roth, 407 So.2d 139, 140 (Ala. Civ. App.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

1981); see also Graham v. State, 210 So.3d 1148, 1156 (Ala. Crim. App. 2016) (" 'Willful' has been defined as '[p]roceeding from a conscious motion of the will.' ") (quoting Phelps v. State, 439 So.2d 727, 733 (Ala. Crim. App. 1983)).

The facts are disputed, but based on the record, a reasonable jury could find that Davis stepped into Avery's path as he was running and punched him in the face without any warning. It could also find that before striking Avery, Davis did not attempt to avoid using force, for example by telling Avery that he was under arrest, and that he did not attempt to use some lesser amount of force. If the jury makes those factual findings, Davis' use of excessive force was "willful[ ]" under Alabama law because he "intentionally and designedly" inflicted injury on Avery. See Sutherland, 407 So.2d at 140. That a reasonable jury could find facts that support a conclusion that Davis acted with a "willful[ ]" subjective intent precludes, at this stage, Alabama state-agent immunity from Avery's state law claims of excessive force. At the same time, that determination has no effect on our federal qualified immunity analysis because qualified immunity is determined objectively and "[t]he subjective intent of government actor defendants plays no part" in the analysis. Koch v. Rugg, 221 F.3d 1283, 1295 (11th Cir. 2000). For those reasons, Davis is entitled to qualified immunity from the federal claims, but he is not entitled to state-agent immunity from the state law excessive force claims at this time. See ***955** Morton, 707 F.3d at 1285.[6]

IV. CONCLUSION

We **REVERSE** the part of the district court's judgment denying Davis qualified immunity with respect to Avery's § 1983 claims. We **AFFIRM** the part of the judgment denying Davis state-agent immunity with respect to Avery's state law claims. We **DISMISS** the appeal with respect to the section 13A-3-27 immunity issue. And we **REMAND** the case to the district court for further proceedings consistent with this opinion.

**All Citations**

700 Fed.Appx. 949

## Footnotes

1 Davis disputes this version of events, but, as mentioned, at this stage we are required to "review[ ] the facts in the light most favorable to [Avery] and resolve all factual disputes in [his] favor." Gas Kwick, Inc. v. United Pac. Ins. Co., 58 F.3d 1536, 1538 (11th Cir. 1995).

2 Avery also asserted a § 1983 claim and state law claims against the City of Birmingham. The district court granted the City's motion for summary judgment, and the claims against the City are not part of this appeal.

3 "Prior to applying the two-part test, the initial inquiry in a qualified immunity case is whether the public official proves that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Brown, 608 F.3d at 734 n.14 (quotation marks omitted). There is no question that Davis was acting within the scope of his discretionary authority at the time of the events at issue here.

4 Davis' actions after arresting Avery, such as bringing Avery back to the ground and holding Avery down with his knee, were justified because Avery admits that he was attempting to stand up while being arrested. Those actions were not excessive force. See, e.g., Zivojinovich v. Barner, 525 F.3d 1059, 1072 (11th Cir. 2008) (holding that "using an uncomfortable hold" on "an uncooperative and potentially belligerent suspect is not unreasonable"). To the extent that Avery argues otherwise, his argument is meritless.

5 The district court's order stated that "a jury could find that every reasonable officer in Officer Davis's position would conclude that the force was unlawful" and therefore excessive. Doc. 23 at 9. That reasoning conflates the excessive force and qualified immunity issues and seems to assume that the jury is to decide the qualified immunity issue. The law is clear that whether a defendant is entitled to qualified immunity is a question of law for the court, not a matter for the jury. See, e.g., Bates v. Harvey, 518 F.3d 1233, 1239 (11th Cir. 2008) ("Whether qualified immunity shields an official from suit is a question of law."); Johnson v. Breeden, 280 F.3d 1308, 1318 (11th Cir. 2002) ("When the case goes to trial, the jury itself decides the issues of historical fact that are determinative of the qualified immunity defense, but the jury does not apply the law relating to qualified immunity to those historical facts it finds; that is the court's duty."); Stone v. Peacock, 968 F.2d 1163, 1166 (11th Cir. 1992) ("The law is now clear ... that the defense of qualified immunity should be decided by the court, and should not be submitted for decision by the jury."); Ansley v. Heinrich, 925 F.2d 1339, 1341 (11th Cir. 1991) ("[T]he availability of a qualified immunity defense is a question of law for the court to determine.").

6 The district court did not discuss whether state-agent immunity shielded Davis from Avery's claim of state law false arrest. That is understandable because Avery did not clearly argue that state-agent immunity did not apply to that claim. The only arguments that could be construed as related to his state law false arrest claim were vague references to "probable cause" and "arguable probable cause" under the heading "State Law Claims." To the extent that Avery still intends to pursue his state law false arrest claim, it is precluded by state-agent immunity. Alabama courts "appl[y] the same 'arguable probable cause' standard utilized in this Court's federal qualified immunity cases" to "determin[e] whether a city police officer receives state-agent immunity" in a claim of false arrest. See Brown, 608 F.3d at 741. And as we have already discussed, there was arguable probable cause for Davis to arrest Avery.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.